FILED

2007 Aug-28  PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **ADARIAN McKINSTRY,** **GWENDOLYN  BRAGGS, and** **JASON KILGO, on behalf of** **themselves and others similarly** **situated** | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| **vs.** | ) ) ) | |
| **COMCAST CORPORATION;** **COMCAST CABLE** **COMMUNICATIONS, LLC;** **COMCAST CABLE** **COMMUNICATIONS HOLDING,** **INC.;  COMCAST MO GROUP,** **INC.;  COMCAST CABLE** **HOLDINGS, LLC; and  COMCAST** **MO OF DELAWARE, LLC,** | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action Number **7:06-cv-1788-UWC** |
| Defendants. | ) ) | |

## MEMORANDUM OPINION ON MOTION
## TO COMPEL ARBITRATION AND MOTION TO DISMISS

In this putative national class action, Defendants have moved to compel arbitration of the claims of Plaintiff Jason Kilgo and to dismiss the claims asserted by the two other named Plaintiffs.  (Docs. 6, 8.)  In the alternative, the Defendants seek a more definite statement of these claims.  For the reasons explained herein, the motion to compel arbitration is due to be granted, and the motion to dismiss is due to be granted in part and denied in part.

# I.  Background Facts

Plaintiffs Jason Kilgo, Adarian McKinstry and Gwendolyn Braggs filed this lawsuit as a class action against Defendants Comcast Corporation; Comcast Cable Communications, LLC; Comcast Cable Communications Holdings, Incorporated; Comcast MO Group, Incorporated; Comcast Cable Holdings, LLC; and Comcast MO of Delaware, LLC ("Comcast").  Plaintiffs assert causes of action against Comcast for: 1) unjust enrichment; 2) money had and received; 3) theft by deception; 4) breach of contract; 5) fraudulent suppression and concealment; 6) fraud; 7) wantonness; and 8) conspiracy.  (Compl. ¶¶ 38-68.)  Plaintiffs seek disgorgement of funds, declaratory and injunctive relief.  (*Id.* ¶¶ 69-75.)

Plaintiffs are former Comcast cable television subscribers.[1]  (Compl. ¶¶ 15-17.) They allege that, as a general policy, Comcast requires all customers to pay their monthly subscriber fees in advance.  (*Id.* ¶ 14.)   According to Plaintiffs, when customers who have paid their subscriber fees in a timely manner cancel or terminate service, Comcast owes those customers a refund of their prepaid subscriber fees. (*Id.*) Plaintiffs contend that Comcast failed to issue a refund to any of the Plaintiffs who timely prepaid their subscriber fees, but whose service was voluntarily terminated. (*Id.* ¶ 18.)

---

[1]  Although Kilgo cancelled his Comcast contract in February 2004, he has since entered into another contract with Comcast.  (Compl. ¶ 17.)

## II. The Arbitration Issue

As previously mentioned, Kilgo cancelled his service with Comcast in February 2004, but re-subscribed to Comcast's service in July 2006. Comcast's Welcome Kit, which was provided to Kilgo and all new subscribers, contains the following arbitration provision:

> **13. Binding Arbitration**
> A. <u>Purpose</u>: If you have a Dispute . . . with Comcast that cannot be resolved through the informal dispute resolution process described in your Welcome Kit from Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

(Doc. 7, Ex. A at Ex. 1, p. 24.) The term "Dispute" is defined as:

> any dispute, claim, or controversy between you and Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause . . . ).

(*Id.*)

Kilgo does not dispute that the Welcome Kit included the arbitration clause and that he was aware of the clause. Instead, he maintains that because the arbitration clause contains a class action bar and is otherwise unconscionable, it is unenforceable.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 5, governs written contracts involving interstate commerce and provides that arbitration clauses in such contracts are "valid, irrevocable, and enforceable." *South Ala. Pigs, LLC v. Farm Feeders, Inc.*, 305 F. Supp.2d 1252, 1262 (M.D. Ala. 2004) (citing 9 U.S.C. § 2). The contract in the present dispute is in writing and involves the transmission of cable services, a form of interstate commerce. *See* 47 U.S.C. §151 (stating that the Federal Communications Commission was created for the purpose of "regulating interstate and foreign commerce in communication by wire and radio"). Thus, the prerequisites of the FAA are satisfied.

In determining whether an arbitration agreement is enforceable, a two-step inquiry is required. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the court must determine whether the parties agreed to arbitrate the dispute, because "the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Id.* If the Court concludes that the parties have agreed to arbitrate, then the Court must decide whether "'legal constraints external to the parties' agreement foreclose[ ] . . . arbitration.'" *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Class action bars in arbitration agreements do not render such agreements unenforceable. *See Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir. 2001) (holding that an arbitration agreement regarding Truth-in-Lending Act claims

was enforceable even if it precluded the class action mechanism); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005) ("the inclusion of a class action waiver in the Arbitration Agreements did not render those Agreements substantively unconscionable.")

The Court finds and concludes that, by renewing his contract with Comcast which included the Welcome Kit, Kilgo has agreed to arbitrate any and all of his disputes with Comcast. The class action bar does not render the arbitration agreement unenforceable.   Consequently, Comcast's motion to compel arbitration will be granted with respect to the claims asserted by Kilgo.

### III. The Motion to Dismiss/For More Definite Statement

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Comcast moves for dismissal of most claims asserted by Plaintiffs or, in the alternative, Comcast seeks a more definite statement with respect to certain claims.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.  A complaint may not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Theater v. Palm Beach County Sheriff's Office*, 443 F.3d 1342, 1352 (11th Cir. 2006) (internal quotations and citations omitted).

## A. Breach of Contract

Comcast argues that Plaintiffs' breach of contract claim should be replead.

Specifically, Comcast contends the claim is conclusory because Plaintiffs do not spell

out whether the contracts were written or oral, when the contracts were made, the

terms of the contracts, or what action the defendants took to breach the terms of the

contract.  Accordingly, Defendants seek a more definite statement with respect to this

claim.

Plaintiffs admit that they have no written or express contracts.  Rather, they

hope to establish the existence of an implied contract.  Specifically, in the complaint,

Plaintiffs allege that they

> entered into valid contracts with Comcast.  The Plaintiffs . . . performed
> all of their obligations under the contracts.  Comcast has breached the
> contracts by failing to refund unearned subscriber frees for which its
> customers did not receive service.  Comcast failed to disclose to the
> Plaintiffs . . . that Comcast has a practice of refusing to refund unearned
> subscriber fees to its former customers.
>                               . . . .
> Comcast represented to the Plaintiffs . . . that Comcast would, upon
> cancellation of service, provide a refund of all prepaid subscriber fees
> for which the customer did not receive service.

(Compl.  ¶¶ 50, 51, 53, 59.)  The Court is persuaded that the complaint states facts

sufficient to support a breach of contract claim: Plaintiffs allege the existence of a

valid contract, Plaintiffs' performance, Comcast's alleged nonperformance and

damages.  *See Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala.

1995) **(**outlining the elements of a breach of contract claim under Alabama law).

Thus, Comcast's motion to dismiss the breach of contract claim is due to be overruled.

## B. Fraud

### 1. Statute of Limitations

Section 6-2-38 of the Alabama Code provides that "all actions for any injury to the person or rights of another not arising from contract and not specifically enumerated [otherwise] must be brought within two years." Accordingly, Plaintiffs' claims for fraud and fraudulent suppression are governed by this two-year statute. It is undisputed that: 1) McKinstry cancelled her service contract with Comcast in February 2003, 2) Braggs cancelled his service contract with Comcast in January 2004, and 3) this action was filed in September 2006.

While more than two years have elapsed since cancellation of the contracts, a claim sounding in fraud does not accrue until the discovery by the plaintiff of the facts constituting the fraud, or the time by which the fraud should reasonably have been discovered. *See* Alabama Code § 6-2-3; *McLaughlin v. Pannell Kerr Forster,* 504 So. 2d 264, 264-65 (Ala. 1987). Comcast contends that Plaintiffs are foreclosed from relying on this discovery rule for two reasons.

First, Comcast argues that Plaintiffs cannot rely on the discovery rule unless they specify the time and circumstances surrounding discovery of the alleged fraud.

In support of this contention, Comcast cites to an Alabama state court case interpreting the specificity requirement found in the Alabama Rule of Civil Procedure 9(b). *See Smith v. National Sec. Ins. Co.*, 860 So. 2d 343, 345 (Ala. 2003) (citing; Ala. R. Civ. P. 9(b)).

In the absence of a showing that this state procedural requirement is binding in the federal courts, the argument is due to be rejected. *See Herring v. Beasley*, 2005 WL 1475304, *3 n.3 (S.D. Ala. June 21, 2005) (noting that Defendants' reliance on a pleading requirement found in the Alabama Rules of Civil Procedure was misplaced because the action was pending in federal court and, therefore, governed by the Federal Rules of Civil Procedure).

Second, Comcast argues that the discovery rule does not rescue Plaintiffs' fraud claim because Plaintiffs knew about or should have discovered the alleged fraud at the time they terminated their cable service more than two years prior to filing their complaint. Under Alabama law, "[f]raud is deemed to have been discovered when the person either actually discovered, <u>or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and by simple investigation of the facts, the fraud would have been discovered</u>." *McLaughlin,* 504 So. 2d at 265 (emphasis in original).

Applying this standard, the Court finds that the fraud and fraudulent suppression claims are not due to be dismissed. While it is possible that Plaintiffs

discovered the alleged fraud at the time they cancelled their cable service, it is just as possible that they discovered the fraud at some later point.  It is not common knowledge that cable bills are paid in advance, thereby necessitating a refund if service is terminated in the middle of the billing cycle.  Therefore, a "person of ordinary prudence" would not necessarily discover fraud of the type alleged here at the time cable service was terminated.  Nor is it necessarily the case that a customer would discover the fraud very soon after termination.

On the other hand, it may well be that the fraud/fraudulent suppression claims asserted by McKinstry's are time barred, even under the discovery rule.  It is undisputed that the present action was initiated in September 2006.  Therefore, in order for McKinstry's claim to be timely under the discovery rule, she must have become aware of the alleged fraud no earlier than September 2004.  However, September 2004 was <u>eighteen</u> months after she cancelled her service in February 2003.  A "person of ordinary prudence" probably would have discovered the alleged fraud in far less than eighteen months after termination of service.

> Nonetheless, the Court is not free to speculate at this juncture, because [t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and is decided as a matter of law only in cases where the plaintiff <u>actually knew</u> of facts that would have put a reasonable person on notice of the fraud.

*Kelly v. Connecticut Mut. Life Ins.*, 628 So. 2d 454, 458 (Ala. 1993) (emphasis in

original) (citations omitted); *see In re Ala. Farmer's Cooperative*, 911 So. 2d 696, 703 (Ala. 2004).  There is no showing of the requisite actual knowledge here.

## 2. The Particularity of the Fraud Claims

Relying on the general rule that fraud claims must be pled with particularity, Comcast seeks dismissal of Plaintiffs' fraud claims on the ground that they are not plead with sufficient particularity.  *See* Fed. R. Civ. P. 9(b).  Comcast contends that Plaintiffs must set forth: (1) precisely what statements were made; (2) the time and place of each statement; (3) the content of such statements and the manner in which they mislead the Plaintiffs; and (4) what defendants obtained as a consequence of the alleged fraud.  *See Garfield v. NDC Health Corp.*, ___ F.3d ___, No. 05-14765, 2006 U.S.  App. LEXIS 25435, at *9 (11th Cir.  October 12, 2006).

As an initial matter, the case upon which Comcast relies, *Garfield v. NDC Health Corporation*, does not require that Plaintiffs set forth the information above. *See id*.  Rather, *Garfield* and the cases upon which it relies, indicate that the particularity requirement is or may be satisfied if the complaint includes the above information.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997).  Even so, in these cases the Eleventh Circuit was careful to point out that the particularity requirement "must be read in conjunction with Rule 8, which requires a plaintiff to plead only a short, plain statement of the grounds upon which

he is entitled to relief. . . .  The application of Rule 9(b) must not abrogate the concept of notice pleading .”  *Id.* at 1471 (citations and internal quotations omitted). Accordingly, “[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the <u>circumstances</u> of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.”  *Durham v. Business Mgmt. Assoc.*, 874 F.2d 1505, 1512 (11th Cir. 1998) (emphasis in original).

This Court is reasonably satisfied that Plaintiffs have pleaded their fraud claim with sufficient specificity to survive a motion to dismiss.  Plaintiffs have “set forth the nature of the alleged misrepresentations, and while [Plaintiffs have] not describe[d] the precise words used, [the] allegation of fraud adequately describes the nature and subject of the alleged misrepresentation.”  *Seville Indus. Mach., Corp. v. Southmost Mach. Corp.* 742 F.2d 786, 791 (3d Cir. 1984) (cited in *Durham*, 874 F.2d at 1512.)  Such information serves the goal behind the particularity requirement: “alerting defendants to the precise misconduct with which they are charged.”  *See Durham*, 874 F.2d at 1512;  *Ziemba* 256 F.3d at 1202.

### 3.  Fraud Claims Against Multiple Defendants

Comcast also argues that in order to meet the Rule 9(b) particularity requirement,  a complaint filed against multiple defendants must detail the role of each defendant in the alleged fraud.  *See McAlister Tower & Transp. Co. v. Thorn’s Diesel Svc. Inc.*, 131 F. Supp.2d 1296, 1301 (M.D. Ala. 2001) (prohibiting “grouping

[of] the defendants together by vaguely alleging that the 'defendants' made the alleged fraudulent statements.") (citing *Brooks*, 116 F.3d 1364 at 1381).  This rule certainly applies to cases like *Brooks v. Blue Cross & Blue Shield of Florida, Incorporated* where Plaintiff sued separate and distinct insurance company defendants, including Blue Cross Blue Shield, New York Life Insurance, and First National Life Insurance.  116 F.3d 1364 at 1371.  There, the Eleventh Circuit held that "the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *Brooks*, 116 F.3d at 1371.

However, Comcast points to no compelling case law that indicates such a rule applies to the present case where the Defendants admit that they are "related corporate entities."  (Doc. 9, Comcast Br. at p. 13.)  Accordingly, Comcast's motion is due to be denied.

## C.  Fraudulent Suppression

Comcast next argues that Plaintiffs' fraudulent suppression claim is due to be dismissed  because  Plaintiffs have not alleged that Comcast owed Plaintiffs a duty to disclose the purportedly withheld information about Comcast's refund policies. *See* Alabama Code § 6-5-102.  This argument is unpersuasive because Alabama law cautions that

> the particular circumstances of a situation can give rise to an obligation
> to disclose.  In order to determine whether a duty to disclose exists, we
> must examine the facts of each individual case; "a rigid approach is

impossible, and, indeed, the words of the statute itself counsel flexibility."

*First Ala. Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.3d 1045, 1056 (11th Cir. 1990) (citing Alabama state cases ) (citations omitted).  Given the Alabama Supreme Court's flexible approach, the Court is unable to conclude, as a matter of law, that no duty to disclose existed.

### D. Theft by Deception

Comcast contends that Plaintiffs' theft by deception claim should be dismissed because Alabama does not recognize  theft by deception as a tort, citing *GMAC v. Dubose*, 834 So. 2d 67, 75 (Ala. 2002).

Comcast's reliance on *GMAC* is misplaced because in that case the Alabama Supreme Court simply mentioned that Plaintiffs asserted a theft by deception claim. 834 So. 2d at 69, 74, 75.  In his concurring opinion, Justice Harwood explained that the theft by deception claim had been dismissed by the trial court.  However, neither Justice Harwood nor the full Court ever addressed the issue of whether such a claim is cognizable under Alabama law.  Instead, the *GMAC* Court addressed the issue of class certification.

Plaintiffs, on the other hand, cite to several cases where the Alabama Supreme Court mentions a civil theft by deception action claim, without being called upon to address the viability of the claim.  *See, e.g.,  Southern Energy Homes, Inc. v. Gary*,

774 So. 2d 521, 525 (Ala. 2000) (overruled on other grounds by *Jim Burke Auto., Inc.*

*v. McGrue*, 826 So. 2d 122 (Ala. 2002); *Ex Parte Billy Shelton v. Blue Cross and*

*Blue Shield of Ala.*, 814 So. 2d 251, 257 (Ala. 2001).

In these circumstances, Comcast's motion to dismiss the theft by deception

claim as a matter of law is due to be denied.

### E. Unjust Enrichment and the  Statute of Limitations

Defendants contend that the statute of limitations for unjust enrichment claims

is two years.   *See Birmingham Hockey Club, Inc. v. National Council of*

*Compensation Ins., Inc.*, 827 So. 2d 73, 81 (Ala. 2002).  Plaintiff, on the other hand,

contends that such claims have a six-year statute of limitations.  *See Davant v. United*

*Land Corp.*, 895 So. 2d 475 (Ala. 2004).  However, the cases upon which the parties

rely do not definitively answer the question.[2]

Without the benefit of an Alabama Supreme Court decision on the issue, the

Court is unwilling to hold, as a matter of law, that the unjust enrichment claim is

barred by the statute of limitations.

### F. Conspiracy and  Wantonness

Both parties agree that the two-year statute of limitations applies to the

---

[2]In *Birmingham Hockey Club,* 827 So.2d at 80,81, because the issue had not been preserved, the Alabama Supreme Court expressly declined to decide whether the catchall two-year statute or the contracts statute applies. Apparently, in *Duvant.* The Alabama Supreme Court assumed, without deciding, that the six-year contracts statute applies to unjust enrichment claims. 896 So.2d at 486-487.

conspiracy and wantonness claims.

Plaintiffs contend, however, that these claims are saved under the "continuing tort" rule.   Under this rule, even where the initial injury occurred outside the limitations period, a defendant may be liable if the defendant engaged in "repetitive acts or ongoing wrongdoing." *See Payton v. Monsanto*, 801 So. 2d 829, 835 n.2 (Ala. 2001) (citations omitted); *see Life Ins. Co. of Ga. v. Smith*, 719 So. 2d 797, 802-803 (Ala. 1998) (applying continuing tort rule in action involving claims of wantonness).

In view the allegations of the extant complaint, and the possibility of amending the complaint to allege repetitive acts or ongoing wrongdoing by Comcast, the Court cannot dismiss the conspiracy and wantonness claims as a matter of law

The Court rejects Comcast's  argument that the conspiracy claim must be dismissed   because, as "related corporate entities," they cannot conspire with themselves.   Unsurprisingly, Comcast cites  no dispositive authority for this proposition. It is clear that under Alabama law, a  conspiracy may exist between  two or more agents of the same corporation.  *See Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297 (Ala. 1986).  It is not that much of a stretch to find that  two or more "related corporate entities," can likewise agree to a civil conspiracy.

Comcast also argues that Plaintiffs' wantonness claim is not sufficiently plead. In the complaint, Plaintiffs allege that "Comcast's conduct, as described herein, constitutes wantonness."   (Compl. ¶ 64.)   As such, Plaintiffs have alleged that

wantonness arises from the conduct which they describe throughout the complaint. The allegations of the complaint are sufficient to survive a motion to dismiss the wantonness claim.  *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 9(b).

## G. Quasi-Contract Claims

Finally, Comcast argues that because Plaintiffs have alleged breach of contract, they cannot plead, in the alternative, claims for unjust enrichment and/or money had and received.   Comcast acknowledgment that the Federal Rules allow for pleadings in the alternative,[3] is dispositive of the motion to dismiss these alternative claims.

## CONCLUSION

By separate order, Defendants' Motion to Compel Arbitration of Plaintiff Kilgo's claims will be granted.   Defendants' Motion to Dismiss the claims of Plaintiffs McKinstry and Braggs, or for a more definite statement of such claims, will be overruled, without prejudice.

 

_____

U.W. Clemon
United States District Judge

---

[3] *See* Fed. R. Civ. P. 8(e)(2).